No. 25-2352

United States Court of Appeals
for the Fourth Circuit

**NATIONAL FAIR HOUSING ALLIANCE,** *et al.*,

**Plaintiffs-Appellants,**

v.

**BANK OF AMERICA NATIONAL ASSOCIATION; SAFEGUARD
PROPERTIES MANAGEMENT, LLC,**

**Defendants-Appellees.**

On Appeal from the United States District Court
for the District of Maryland
(Hon. Stephanie A. Gallagher, United States District Judge)

## BRIEF OF PLAINTIFFS-APPELLANTS

Jessica P. Weber
Andrew D. Freeman
Lauren A. DiMartino
Alisha Jarwala
Brown, Goldstein & Levy, LLP
120 East Baltimore Street, Suite 2500
Baltimore, MD 21202
Phone: 410-962-1030
Fax: 410-385-0869
jweber@browngold.com
adf@browngold.com
ldimartino@browngold.com
ajarwala@browngold.com

*Counsel for Plaintiffs-Appellants*

Janell M. Byrd
Morgan Williams
Sasha Samberg-Champion
National Fair Housing Alliance
1331 Pennsylvania Avenue NW, Suite 650
Washington, DC 20004
Phone: 202-898-1661
jbyrd-chichester@nationalfairhousing.org
mwilliams@nationalfairhousing.org
ssamberg-champion@nationalfairhousing.org

Michael B. Posner
Posner PLLC
1601 Connecticut Avenue NW, Suite 800
Washington DC 20009
Phone: 202-670-3815
michael@posnerpllc.com

*Counsel for Plaintiff-Appellant National Fair
Housing Alliance*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2352__      Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__National Fair Housing Alliance__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.   Does party/amicus have any parent corporations?                      ☐YES ☑NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐YES ☑NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☑YES ☐NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

    There is no such member.

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-2352     Caption: National Fair Housing Alliance, et al. v. Bank of America N.A., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Housing Opportunities Project for Excellence, Inc.
(name of party/amicus)

who is _____ Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2. Does party/amicus have any parent corporations?    ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
   If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.


7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.


Signature: _____    Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2352__     Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Metro Fair Housing Services, Inc.__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO

2.     Does party/amicus have any parent corporations?     ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐YES ☑NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>25-2352</u>      Caption: <u>National Fair Housing Alliance, et al. v. Bank of America N.A., et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>North Texas Fair Housing Center</u>
(name of party/amicus)

_____

who is _____<u>Appellant</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                   ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: _____    Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-2352        Caption: National Fair Housing Alliance, et al. v. Bank of America N.A., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Fair Housing Center of West Michigan
(name of party/amicus)

who is _____ Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation?                        ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                         ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
        party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
        caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
        corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?         ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational
        victim of the criminal activity and (2) if an organizational victim is a corporation, the
        parent corporation and any publicly held corporation that owns 10% or more of the stock
        of victim, to the extent that information can be obtained through due diligence.

Signature: _____            Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2352__    Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Fair Housing Continuum, Inc.__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-2352__          Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__South Suburban Housing Center, d/b/a Hope Fair Housing Center__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.     Does party/amicus have any parent corporations?                    ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:



3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                   ☐YES ☑NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2352__        Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__H.O.P.E. Inc. d/b/a Hope Fair Housing Center__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                        ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____    Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _25-2352_       Caption: _National Fair Housing Alliance, et al. v. Bank of America N.A., et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Metropolitan Milwaukee Fair Housing Council_
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants _____

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2352__    Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Fair Housing Center of Central Indiana__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?                    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                 ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?        ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.

Signature: _____          Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-2352__      Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Denver Metro Fair Housing Center__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.  Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.  Does party/amicus have any parent corporations?    ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
    If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: _____          Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2352__          Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Fair Housing Opportunities of Northwest Ohio, Inc., d/b/a Toledo Fair Housing Center__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO


2.      Does party/amicus have any parent corporations?      ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: _____        Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2352__      Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Louisiana Fair Housing Action Center__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2. Does party/amicus have any parent corporations?   ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐YES ☑NO
   If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____        Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>25-2352</u>    Caption: <u>National Fair Housing Alliance, et al. v. Bank of America N.A., et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Fair Housing Advocates of Northern California</u>
(name of party/amicus)


who is <u>Appellant</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?          ☐YES ☑NO
If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete this question)          ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?          ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.


7.    Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.


Signature: _____          Date: _____11/21/2025_____

Counsel for: __Plaintiffs-Appellants_____

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2352__    Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Housing Research and Advocacy Center, d/b/a Fair Housing Center for Rights and Research__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____       Date: _____11/21/2025_____

Counsel for: _Plaintiffs-Appellants_____

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-2352      Caption: National Fair Housing Alliance, et al. v. Bank of America N.A., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Fair Housing Center of Northern Alabama
(name of party/amicus)

who is _____ Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants _____

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-2352     Caption: National Fair Housing Alliance, et al. v. Bank of America N.A., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Miami Valley Fair Housing Center
(name of party/amicus)

who is _____ Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2. Does party/amicus have any parent corporations? ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
   If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: _____          Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-2352__      Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Connecticut Fair Housing Center__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?              ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____          Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2352__      Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

Fair Housing Council of South Texas f/k/a/ Fair Housing Council of Greater San Antonio
(name of party/amicus)

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO

2.  Does party/amicus have any parent corporations?      ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐YES ☑NO
    If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants _____

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2352__      Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Fair Housing Center of the Greater Palm Beaches, Inc.__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct
       financial interest in the outcome of the litigation?                    ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected
       substantially by the outcome of the proceeding or whose claims the trade association is
       pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
       If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
       party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
       caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
       corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
       If yes, the United States, absent good cause shown, must list (1) each organizational
       victim of the criminal activity and (2) if an organizational victim is a corporation, the
       parent corporation and any publicly held corporation that owns 10% or more of the stock
       of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____11/21/2025_____

Counsel for: __Plaintiffs-Appellants_____

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2352__     Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Wanda Onafuwa__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO

2. Does party/amicus have any parent corporations?     ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐YES ☑NO
   If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2352__    Caption: __National Fair Housing Alliance, et al. v. Bank of America N.A., et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Chevelle Bushnell__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____      Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _25-2352_    Caption: _National Fair Housing Alliance, et al. v. Bank of America N.A., et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Jalen Bushnell_
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?          ☐YES ☑NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?          ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____          Date: _____11/21/2025_____

Counsel for: Plaintiffs-Appellants

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION .............................................................................. 1

STATEMENT OF JURISDICTION ..................................................... 3

STATEMENT OF ISSUES .................................................................. 3

STATEMENT OF THE CASE ............................................................. 4

    A.    The Fair Housing Act ........................................................ 4

    B.    Factual Background ........................................................... 6

    C.    Procedural History ............................................................ 7

SUMMARY OF ARGUMENT ............................................................ 12

STANDARD OF REVIEW ................................................................. 15

ARGUMENT ...................................................................................... 15

I.    The fair-housing organizations have standing, and the court should have granted leave to amend the complaint. ........................................................ 15

    a.    Because the organizations allege that Defendants' conduct directly impaired core activities, they have standing. ...................................... 15

    b.    The court erred by denying leave to amend the complaint. ................ 25

II.    The district court erred in granting judgment for Defendants on the disparate-impact claim. ................................................................... 28

    a.    Defendants did not meet their burden at step two. .............................. 28

        1.    The court applied the wrong standard. ...................................... 28

        2.    The court also erred in concluding that failures to act did not have to be justified at step two. ................................................ 32

        3.    Because Defendants did not undisputably prove that the challenged policies and practices served their legitimate interests, they failed to meet their burden at step two. ............ 36

i

b.      Even if it were proper for the district court to reach step three of the disparate-impact claim, triable issues of fact at that step preclude summary judgment. ................................................................................43

III.    The court wrongly granted summary judgment for Defendants on the intentional-discrimination claim. ...................................................................48

a.      Enough circumstantial evidence exists to establish intentional discrimination without burden shifting. ...............................................48

b.      There is also enough evidence to show intentional discrimination using burden shifting. ...........................................................................53

IV.     The court abused its discretion by declining to exercise supplemental jurisdiction over the state-law claims. ..........................................................58

CONCLUSION ................................................................................................58

STATEMENT REGARDING ORAL ARGUMENT ..............................................59

# TABLE OF AUTHORITIES

## Cases

*Archie v. Nagle & Zaller, P.C.*,
  790 F. App'x 502 (4th Cir. 2019) ........................................................15

*Bank of America Corp. v. City of Miami*,
  581 U.S. 189 (2017) ............................................................................24

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
  777 F.3d 712 (4th Cir. 2015) ..............................................................15

*Brooks v. Johnson*,
  924 F.3d 104 (4th Cir. 2019) ..............................................................15

*Brown v. Nucor Corp.*,
  785 F.3d 895 (4th Cir. 2015) ....................................................... *passim*

*Caicedo v. DeSantis*,
  No. 6:23-cv-2303, 2024 WL 4729160 (M.D. Fla. Nov. 8, 2024) .......................21

*Chalmers v. City of New York*,
  No. 20 CIV 3389, 2022 WL 4330119 (S.D.N.Y. Sept. 19, 2022) ......................35

*Chen-Oster v. Goldman, Sachs & Co.*,
  No. 10-cv-6950, 2022 WL 814074 (S.D.N.Y. Mar. 17, 2022)...........................55

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988) ............................................................................35

*Chuang v. Univ. of Ca. Davis, Bd. of Trustees*,
  225 F.3d 1115 (9th Cir. 2000)..............................................................56

*City of L.A. v. Wells Fargo & Co.*,
  No. 213CV09007ODWRZX, 2015 WL 4398858 (C.D. Cal. July 17, 2015),
  *aff'd*, 691 F. App'x 453 (9th Cir. 2017) ..............................................35

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................23

*Corey v. Sec'y, U.S. Dep't of Hous. & Urb. Dev. ex rel. Walker*,
  719 F.3d 322 (4th Cir. 2013).........................................................5, 48

*Cuthbertson v. Biggers Bros.*,
702 F.2d 454 (4th Cir. 1983) ................................................................30

*Dandy v. United Parcel Serv., Inc.*,
388 F.3d 263 (7th Cir. 2004) ......................................................... 48, 51

*Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth.*,
417 F.3d 898 (8th Cir. 2005) ................................................................29

*Davis v. Piper Aircraft Corp.*,
615 F.2d 606 (4th Cir. 1980) ................................................................26

*Davison v. Randall*,
912 F.3d 666 (4th Cir. 2019) ................................................................15

*Edwards v. City of Goldsboro*,
178 F.3d 231 (4th Cir. 1999) ................................................................26

*EEOC v. Dolgencorp, LLC*,
No. 13 C 4307, 2017 WL 7310078 (N.D. Ill. Dec. 11, 2017)..............45

*EEOC v. Joint Apprenticeship Comm. of the Joint Indus. Bd. of the Elec. Ind.*,
186 F.3d 110 (2d Cir. 1998)................................................................32

*EEOC v. Schuster Co.*,
No. 19-CV-4063-LRR, 2021 WL 1592668 (N.D. Iowa Apr. 13, 2021).............47

*El v. Se. Pa. Transp. Auth.*,
479 F.3d 232 (3d Cir. 2007) ................................................................39

*Fair Hous. Ctr. of Metro. Detroit v. Am. House Grosse Pointe, LLC*,
No. 23-2051, 2025 WL 66747 (6th Cir. Jan. 10, 2025)........................27

*Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living*,
124 F.4th 990 (6th Cir. 2025) ................................................................27

*Fair Hous. Ctr. of Wash. v. Breier-Scheetz Props., LLC*,
743 Fed. Appx. 116 (9th Cir. 2018)................................................ 29, 39

*Fair Hous. Just. Ctr., Inc. v. Pelican Mgmt., Inc.*,
No. 18-cv-1564, 2023 WL 6390159 (S.D.N.Y. Sept. 29, 2023), *aff'd*, No. 23-cv-7348, 2025 WL 251723 (2d Cir. Jan. 21, 2025)................................................40

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ........................................................................ *passim*

*Get Loud Arkansas v. Thurston*,
  No. 5:24-cv-5121, 2024 WL 4142754 (W.D. Ark. Sept. 9, 2024) ......................21

*Goodman v. Diggs*,
  986 F.3d 493 (4th Cir. 2021) ...............................................................42

*Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cnty. Metro Hum. Rels. Comm'n*,
  508 F.3d 366 (6th Cir. 2007) ...............................................................30

*Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Par.*,
  648 F. Supp. 2d 805 (E.D. La. 2009) ....................................................51

*Griggs v. Duke Power Co.*,
  401 U.S. 424 (1971) ..........................................................................28

*Guan v. Long Island Bus. Inst., Inc.*,
  No. 15-CV-2215, 2017 WL 11703860 (E.D.N.Y. Sept. 30, 2017) ....................52

*Hamilton v. Promise Healthcare*,
  No. 23-30190, 2023 WL 6635076 (5th Cir. 2023) ...............................42

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ..................................................................... *passim*

*Hollis v. Chestnut Bend Homeowners Ass'n*,
  760 F.3d 531 (6th Cir. 2014) ...............................................................30

*Inclusive Communities Project, Inc. v. Texas Dep't of Hous. & Cmty. Affs.*,
  747 F.3d 275 (5th Cir. 2014), *aff'd*, 576 U.S. 519 (2015)........................... *passim*

*Kairys v. S. Pines Trucking, Inc.*,
  75 F.4th 153 (3d Cir. 2023) .................................................................42

*King v. Burwell*,
  759 F.3d 358 (4th Cir. 2014) ...............................................................15

*Lane v. Holder*,
  703 F.3d 668 (4th Cir. 2012) ...............................................................17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ........................................................................24

*Martin v. Emmanuel*,
  No. 19 CV 1708, 2019 WL 4034506 (N.D. Ill. Aug. 27, 2019) .........................51

*Mhany Mgmt., Inc. v. Cnty. of Nassau*,
  819 F.3d 581 (2d Cir. 2016)......................................................... 29, 32, 51

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024) ........................................................................41

*Murthy v. Ind. Univ. of Pa.*,
  No. 12-1194, 2013 WL 1363924 (W.D. Pa. Apr. 3, 2013)...................................52

*NFHA v. Deutsche Bank Nat'l Tr.*,
  No. 18-cv-839, 2018 WL 6045216 (N.D. Ill. Nov. 19, 2018)...................... 34, 35

*NFHA v. Deutsche Bank Nat'l Tr.*,
  No. 18-cv-839, 2025 WL 975967 (N.D. Ill. Mar. 31, 2025) ........................ 21, 24

*NFHA v. Deutsche Bank Nat'l Tr.*,
  No. 18-cv-839, 2019 WL 5963633 (N.D. Ill. Nov. 13, 2019)...............................24

*NFHA v. Fannie Mae*,
  294 F. Supp. 3d 940 (N.D. Cal. 2018)............................................. 34, 35

*Phillips v. Cohen*,
  400 F.3d 388 (6th Cir. 2005) ....................................................... 30, 32

*Pickett v. City of Clev.*,
  No. 1:19 CV 2911, 2023 WL 11987525 (N.D. Ohio Sept. 29, 2023) .......... 40, 42

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133 (2000) ............................................................. 31, 56, 57

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
  120 F.4th 390 (4th Cir. 2024) ..................................................... *passim*

*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
  903 F.3d 415 (4th Cir. 2018).................................................... 5, 29, 31

*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
   91 F.4th 270 (4th Cir. 2024), *cert. denied*, 145 S.Ct. 172 (2024) ............... *passim*

*Richardson v. City of New York*,
   No. 17-CV-9447, 2018 WL 4682224 (S.D.N.Y. Sept. 28, 2018) ........................35

*S.C. State Conf. of NAACP v. S.C. Dep't of Juv. Just.*,
   No. 22-cv-1338, 2024 WL 5153170 (D.S.C. Dec. 18, 2024) ..............................21

*Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*,
   914 F.3d 213 (4th Cir. 2019) ...................................................................27

*Segar v. Smith*,
   738 F.2d 1249 (D.C. Cir. 1984) ........................................................ 32, 38

*Smith v. Town of Clarkton*,
   682 F.2d 1055 (4th Cir. 1982) ..................................................................51

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993) ......................................................................... 42, 55

*Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*,
   17 F.4th 950 (9th Cir. 2021) ...................................................................30

*Tex. Dep't of Cmty. Affairs v. Burdine*,
   450 U.S. 248 (1981) .........................................................................6, 56

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
   576 U.S. 519 (2015) ................................................................... *passim*

*Troupe v. May Dep't Stores Co.*,
   20 F.3d 734 (7th Cir. 1994) ....................................................................50

*United States ex rel. Nicholson v. MedCom Carolinas, Inc.*,
   42 F.4th 185 (4th Cir. 2022) ...................................................................26

*United States v. Griley*,
   814 F.2d 967 (4th Cir. 1987) ...................................................................47

*United States v. Tony*,
   121 F.4th 56 (10th Cir. 2024) .................................................................42

*United States v. Venable*,
   943 F.3d 187 (4th Cir. 2019) ..............................................................41

*Vathekan v. Prince George's Cnty.*,
   154 F.3d 173 (4th Cir. 1998) ..............................................................58

*Walker v. Richmond Newspapers, Inc.*,
   843 F.2d 1389 (4th Cir. 1988) ............................................................53

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................9, 33

*Wannamaker-Amos v. Purem Novi, Inc.*,
   126 F.4th 244 (4th Cir. 2025) ........................................... 49, 55, 57, 58

*Wards Cove Packing Co. v. Atonio*,
   490 U.S. 642 (1989) ...........................................................................30

*Watson v. Fort Worth Bank & Trust*,
   487 U.S. 977 (1988) ...........................................................................33

*Williams v. Boeing Co.*,
   225 F.R.D. 626 (W.D. Wash. 2005) ....................................................52

**Statutes**

28 U.S.C. § 1291 ........................................................................................3

28 U.S.C. § 1331 ........................................................................................3

28 U.S.C. § 1367 ......................................................................................58

42 U.S.C. § 3601 ........................................................................................4

42 U.S.C. § 3604 ........................................................................................5

42 U.S.C. § 3605 ........................................................................................5

42 U.S.C. § 3613 ........................................................................................3

**Rules**

Fed. R. App. P. 4(a)(1)(A) ........................................................................3

Fed. R. Civ. P. 15(a)(2) ................................................................... 25

Fed. R. Civ. P. 56(c)(4) ................................................................... 50

**Regulations**

12 C.F.R. § 100.500 ........................................................................ 31

24 C.F.R. § 100.65 ........................................................................... 5

24 C.F.R. § 100.7 ........................................................................... 52

26 C.F.R. § 1.501 ........................................................................... 23

**Other Authorities**

Implementation of the Fair Housing Act's Discriminatory Effects Standard,
78 FR 11460 (Feb. 15, 2013) ..................................................... 31

Reinstatement of HUD's Discriminatory Effects Standard,
88 FR 18450 (Mar. 31, 2023) ..................................................... 31

# INTRODUCTION

Following the 2008 financial crisis, Bank of America foreclosed on homes nationwide and hired Safeguard Properties Management to maintain them until the bank could sell them. But as the twenty plaintiff fair-housing organizations uncovered through a years-long, nationwide investigation, Bank of America and Safeguard maintained and marketed properties in majority-Black-and-Latino neighborhoods much more poorly than properties in majority-White neighborhoods, leaving homes in communities of color with more problems like trash on the lawn, overgrown grass, blocked gutters, and damaged roofs. The district court previously found that the evidence of Defendants' racial discrimination was sufficient to present a prima facie case to a jury. But seven years into this litigation, the court decided that the organizations that investigated and worked to counteract Defendants' discrimination—and whose longstanding work to stabilize and integrate communities of color was harmed by it—no longer had standing to hold Defendants accountable for their injuries. It then decided that Defendants' claims of "business efficiency"—words unsupported by any evidence—warranted judgment for Defendants on the merits of the disparate-impact and disparate-treatment claims before a jury could hear the evidence of discrimination or weigh the credibility of this defense.

As the district court initially held in 2019, however, the fair-housing organizations have standing. The Supreme Court recently reaffirmed that an organization has standing when, as here, a defendant's conduct impairs the organization's ability to carry out its work. Any doubt the district court had based on new precedent was removed by Plaintiffs' proposed amended complaint, and the court erred by denying leave to amend.

The court also erred repeatedly in granting summary judgment for Defendants on the merits. On the disparate-impact claim, it applied the wrong legal standard—a burden of production instead of a burden of proof. And it incorrectly held, reversing its prior holding and contradicting this Circuit's law, that Defendants' failures to supervise their property-maintenance vendors could not give rise to a claim. Following these erroneous legal rulings, the court wrongly concluded that Defendants had produced enough evidence to meet their summary-judgment burden. In doing so, the court disregarded several material factual disputes that the court itself found—and indeed used to deny Plaintiffs' cross-motion for summary judgment—and that should have precluded summary judgment had it applied the correct legal standard. And in finding for Defendants on the disparate-treatment claim, the court ignored nearly all the evidence of Defendants' discriminatory intent and the pretextual nature of their supposed

explanations for the racial disparities—either of which could allow a jury to find for Plaintiffs.

For these reasons and others, the court's decisions on standing and summary judgment should be reversed.

## STATEMENT OF JURISDICTION

Because this case arises under the Fair Housing Act, the district court had jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 3613(a). The court dismissed the organizations' claims for lack of standing and granted Defendants' motion for summary judgment on July 21, 2025. ECF381. The court denied leave to amend the complaint, declined to exercise supplemental jurisdiction over state claims, and entered final judgment for Defendants on the federal claims on October 16, 2025. ECF395. Appellants timely appealed on October 30, 2025. ECF396. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

**1.a.    Article III Standing**: Do the organizations' allegations that Defendants' conduct directly impaired several of their core activities confer standing?

**1.b.**    Did the district court improperly deny leave to amend the complaint, particularly since it reversed its prior holding that the organizations had standing after the Supreme Court decided *Food & Drug Administration v. Alliance for*

3

*Hippocratic Medicine*, 602 U.S. 367 (2024), and Plaintiffs had not previously amended the complaint in light of this recent decision?

**2a.     Disparate-Impact Claim**: Did the court err in holding that Defendants met their burden at step two of the burden-shifting framework despite finding several material factual disputes?

**2.b.**   Did the court err in finding that Plaintiffs' evidence of less discriminatory alternatives did not create a triable issue of fact at step three of the burden-shifting framework?

**3.     Disparate-Treatment Claim**: Did the court err in finding that Plaintiffs' evidence of intentional discrimination did not create a triable issue of fact?

**4**.     **State-Law Claims**: If the court improperly granted summary judgment for Defendants on Plaintiffs' federal claims, did the court abuse its discretion in declining to exercise supplemental jurisdiction over state-law nuisance claims?

**STATEMENT OF THE CASE**

**A. The Fair Housing Act**

The Fair Housing Act aims "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. To that end, the Act broadly prohibits making housing unavailable, discriminating in the terms or

conditions of housing, and discriminating in residential real-estate-related transactions on the basis of race and national origin. 42 U.S.C. §§ 3604(a),(b), 3605(a); *see also* 24 C.F.R. § 100.65(b)(2) (prohibiting "[f]ailing or delaying maintenance … because of race"). A plaintiff can prove a violation under a theory of disparate treatment or disparate impact. *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015).

Disparate-impact claims use a three-step burden-shifting framework. The first step requires the plaintiff to "demonstrate a robust causal connection between the defendant's challenged policy and the disparate impact on the protected class." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 424 (4th Cir. 2018) ("*Reyes I*"). Second, if the plaintiff does so, then "the defendant has the burden of persuasion to 'state and explain the valid interest served by their policies.'" *Id.* (quoting *Inclusive Cmtys.*, 576 U.S. at 541). Third, if the defendant meets this burden, the burden shifts back to the plaintiff "to prove that the defendant's asserted interests could be served by another practice that has a less discriminatory effect." *Id.* (quoting *Inclusive Cmtys.*, 576 U.S. at 527).

A plaintiff can prove intentional discrimination "either [1] directly, through direct or circumstantial evidence, or [2] indirectly, through the inferential burden shifting method known as the *McDonnell Douglas* test." *Corey v. Sec'y, U.S. Dep't of Hous. & Urb. Dev. ex rel. Walker*, 719 F.3d 322, 325 (4th Cir. 2013). Using

burden shifting, the plaintiff first must prove a prima facie case of intentional discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Second, if the plaintiff succeeds, a burden of production shifts to the defendant to put forward a "legitimate, nondiscriminatory reason" for its action. *Id.* at 253. Third, if the defendant does so, the plaintiff bears the burden of proving that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id*.

**B.     Factual Background**

In the wake of the 2008 financial crisis, Bank of America foreclosed on hundreds of thousands of homes around the country. ECF1:27-29. The bank, which then owned these homes, often called real-estate-owned properties or REOs, marketed many of them for sale and hired Safeguard Properties Management to maintain most of them. *Id*. The bank granted Safeguard wide discretion over how to maintain its REOs and did not provide non-discrimination training or monitor for discrimination. ECF182:58-70. Safeguard, in turn, minimally supervised its third-party vendors that conducted the property maintenance and failed to provide non-discrimination training or monitor for discrimination. *Id*.

The National Fair Housing Alliance ("NFHA") began receiving complaints that exterior maintenance and marketing of REOs in communities of color was worse than in majority-White neighborhoods. ECF235:2. So NFHA began an

investigation of the maintenance and marketing of REOs, using criteria like accumulated mail, overgrown grass, boarded windows, hanging gutters, and missing for-sale signs. ECF182:14, ECF183-5:1-8. NFHA initially found that Bank of America's REOs in communities of color were, in fact, being maintained and marketed more poorly than in majority-White neighborhoods and informed the bank of these results. ECF182:25, ECF183-5:2-3. The bank took no corrective action. *Id.* Neither did Safeguard, which was also aware of NFHA's investigation. ECF182:26, ECF183-14:3-5, 11-16. Once it became clear that Bank of America would not address its discriminatory conduct, NFHA and 19 other fair-housing organizations expanded the investigation. ECF1:53, ECF183-5:2-3. In the end, the investigation, conducted across 37 metropolitan areas, found widespread racial disparities in exterior maintenance and marketing defects among Bank of America's REOs that were "highly statistically significant." ECF235:2-3.

## C. Procedural History

*1. Complaint.* In 2018, 20 fair-housing organizations and three individuals who lived next to Bank of America REOs brought this case against the bank and Safeguard. Plaintiffs alleged that Defendants' discriminatory maintenance of REOs violated the Fair Housing Act under disparate-impact and disparate-treatment theories. ECF1:105-110. In support of their impact theory, Plaintiffs alleged that Defendants' policies and practices caused the racial disparities,

7

including their grants of broad discretion to maintain and market REOs and failure to supervise that discretion. ECF1:61-64. The individual plaintiffs also asserted state-law nuisance claims. ECF1:110-11.

**2. Defendants' first motion to dismiss.** In 2019, the district court denied Defendants' first motion to dismiss, which had alleged lack of standing and failure to state disparate-impact or disparate-treatment claims. ECF66. The court held that the organizations had standing based on "the diversion of resources away from other pursuits, frustration of mission, impairment to their community investment programs, and educational and advocacy efforts that were needed to mitigate the downstream effects of the defendants' allegedly discriminatory home maintenance" and the costs of their investigation. ECF66:8. The court also found that the complaint stated a disparate-impact claim. ECF66. Because a plaintiff may proceed under either theory of liability, the court did not analyze the disparate-treatment claim. *Id*.

**3. Defendants' first motion for summary judgment.** In 2022, after some discovery, Defendants moved for summary judgment, arguing that Plaintiffs could not establish a prima facie case of disparate-impact or disparate-treatment discrimination. ECF166-7. The court denied the motion. ECF235. The court found that the ten policies Plaintiffs identified as causing a racial disparity, which it summarized as "different permutation[s] of an overarching policy of undue

8

delegation and failure to supervise," could support disparate-impact liability under Supreme Court precedent. ECF235:30-31 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355 (2011)). And because Plaintiffs had enough evidence to show that this policy caused a significant racial disparity, they could satisfy step one of a disparate-impact claim. ECF235:34. The racial disparities could also establish a prima facie case of disparate treatment. ECF235:34-36.

> **4. Cross motions for summary judgment and Defendants' second motion to dismiss.** In 2024, after additional discovery, Plaintiffs moved for summary judgment on step two of their disparate-impact claim, ECF287, and Defendants cross-moved for summary judgment on the disparate-impact and disparate-treatment claims. ECF299. While those motions were pending, the Supreme Court addressed organizational standing in *Hippocratic Medicine*, and in 2025 Defendants again moved to dismiss for lack of standing. ECF343.

Post-*Hippocratic Medicine*, the court held that the organizations' allegations were insufficient to confer standing. ECF380:13. The court therefore reversed its previous holding on standing and dismissed the organizations' claims for damages. ECF380:20. Because the organizations' claim for injunctive relief and the claims of the individual plaintiffs remained, the court proceeded to the merits of the Fair Housing Act claims. *Id*.

On the merits of disparate-impact liability, the court changed its previous ruling that Defendants' policies of granting discretion and failing to supervise that discretion could support the claim, and now concluded that "several of the ten 'policies,' [specifically] those couched as 'failures' to do something, object to 'the lack of a policy,' which is not actionable." ECF380:30. As a result, the court did not require Defendants to justify their failures to act at step two, including their failure to provide any fair-housing training or monitor for discrimination. ECF380:38-39. As to the remaining challenged policies, the court found several factual disputes "to be assessed by the factfinder at trial" on the step-two inquiry of whether the policies served Defendants' interests in efficiency and cost control. ECF380:37-42. The court therefore denied Plaintiffs' motion for summary judgment on step two. ECF380:42. Despite these factual disputes, the court found that Defendants *had* nonetheless satisfied their step-two burden, reasoning that they bore only a burden of production. Because the "interim burden of production" the court imposed on Defendants "does not readily lend itself to 'summary judgment' in a defendant's favor," the court declined to grant summary judgment for Defendants at step two and proceeded to step three. ECF380:32-33n.12. There, the court concluded that Plaintiffs' evidence, which included testimony from three experts on less-discriminatory alternatives, did not create a triable issue of fact, and

10

so granted summary judgment for Defendants on the disparate-impact claim.
ECF380:51.

　　With respect to disparate treatment, the court used the *McDonnell Douglas*
burden-shifting framework and found that Defendants met their step-two burden
because "the business justifications Defendants offered to meet their burden under
step two of the disparate-impact framework, namely business efficiency and cost-
control driven by HUD and investor guidelines, also suffice under the disparate-
treatment framework as the legitimate, nondiscriminatory explanations for
Defendants' maintenance practices." ECF380:52. Proceeding to step three, the
court found that Plaintiffs failed to create a triable issue of fact on whether
Defendants' nondiscriminatory explanations were pretextual because, in the court's
view, Plaintiffs "did not plead any allegations of motive or intent 'beyond the
statistics themselves.'" ECF380:53. The court therefore granted summary
judgment for Defendants on the disparate-treatment claim, as well. ECF380:54.

　　　　**5. Plaintiffs' motion for leave to amend.** After the court dismissed the
organizations' claims for damages, Plaintiffs moved to amend the complaint to add
details the court found lacking in light of *Hippocratic Medicine*. ECF388. The
court "assume[d] without deciding" that the proposed amended complaint "would
suffice to give the" organizations standing, ECF394:5n.2, but denied the motion as
prejudicial because, in the court's view, "[a]dditional discovery would be

11

inevitable," ECF394:7, and futile because it had already decided the merits. ECF394:9. The court then declined to exercise supplemental jurisdiction over the individuals' nuisance claims and entered final judgment in favor of Defendants on the Fair Housing Act claims. ECF395.

## SUMMARY OF ARGUMENT

**I.A.** As the Supreme Court recently reaffirmed, organizational standing exists when a defendant's conduct "directly affect[s] and interfere[s] with [an organization's] core business activities." *Hippocratic Med.*, 602 U.S. at 395. The fair-housing organizations here allege just that. Defendants' discriminatory maintenance and marketing set back the organizations' core work, including community-development work to stabilize and strengthen communities of color, by causing blight and making those communities less desirable and valuable. Defendants' conduct has also made it harder for the organizations to provide counseling and referral services to homeseekers, another core activity, by depleting the availability and appeal of housing in communities of color. And Defendants' conduct forced the organizations to divert resources away from other core activities, such as work to instill fair-lending practices at financial-services agencies, to combat Defendants' discrimination. These allegations show concrete injury that confers standing.

**I.B.** Because the proposed amended complaint addresses any possible deficiencies that might exist after *Hippocratic Medicine*, the district court should have allowed it. Amendment is not prejudicial when, as here, it adds specificity to matters already in the complaint. Amendment is especially warranted here because the court reversed its holding on standing, seven years into the case, based on its interpretation of a recent Supreme Court decision. The court's other basis for denying leave, that amendment would be futile because Plaintiffs cannot prevail on the merits, is also in error, because the court wrongly decided the merits.

**II.A.** The court made several errors at step two of the disparate-impact framework. First, it wrongly imposed on Defendants only a burden of production rather than a burden of proof. As the Supreme Court has explained, defendants can "maintain a policy if they can *prove* it is necessary to achieve a valid interest." *Inclusive Cmtys.*, 576 U.S. at 541 (emphasis added). Second, reversing its prior holding, the court wrongly held that Defendants' failures to act could not support a disparate-impact claim (and so need not be justified at step two). As this Court has ruled, disparate-impact liability can stem from "affirmative acts *or inaction*." *Brown v. Nucor Corp.*, 785 F.3d 895, 916 (4th Cir. 2015) (emphasis added).

Third, the court erred in finding that Defendants' justifications met even a burden of production, let alone the applicable burden of proof. Defendants justified their practices of operating nationwide and hiring contractors as cost-efficient and

13

effective. But Plaintiffs do not challenge operating nationwide or using contractors. Rather, they challenge Defendants' practices of granting those contractors wide discretion to maintain homes with minimal supervision—so *those* are the practices that must be defended. Defendants put forth no justification for those practices. And even Defendants' justifications of the practices of their choosing were insufficient because their conclusory assertions of efficiency and effectiveness lacked any empirical support and, as the court recognized in denying Plaintiffs' cross-motion for summary judgment, were factually disputed. The court thus should not have proceeded to step three of the disparate-impact framework.

**II.B.** The court also erred at step three. Plaintiffs provided testimony from three experts showing several less discriminatory alternatives to the challenged practices. Contrary to this evidence, the court decided that the alternatives were not different enough, as effective, or less discriminatory. Yet the decision whether to credit this evidence is for the jury.

**III.** The court also made several errors in its disparate-treatment analysis. If a plaintiff has sufficient evidence of intent, burden shifting is not necessary. Plaintiffs amassed such evidence, including testimony from a Safeguard vendor that communities of color "were not held to the same standard by Safeguard as in whiter areas." ECF183-52:4. The court never considered this evidence. And when

analyzing the claim using burden-shifting, the court similarly ignored Plaintiffs' evidence that Defendants' non-discriminatory explanations are pretextual.

**IV.** Finally, because the court should not have granted summary judgment for Defendants on the Fair Housing Act claims, it should have exercised supplemental jurisdiction over the state-law claims.

## STANDARD OF REVIEW

This Court reviews standing and summary-judgment decisions *de novo*. *King v. Burwell*, 759 F.3d 358, 365 (4th Cir. 2014); *Brooks v. Johnson,* 924 F.3d 104, 111 (4th Cir. 2019). Denial of leave to amend a complaint based on prejudice is reviewed for abuse of discretion, whereas denial of leave to amend for futility is reviewed *de novo. Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019). A court's decision on supplemental jurisdiction is reviewed for abuse of discretion. *Archie v. Nagle & Zaller, P.C.*, 790 F. App'x 502, 505 (4th Cir. 2019).

## ARGUMENT

**I.    The fair-housing organizations have standing, and the court should have granted leave to amend the complaint.**

**a.    Because the organizations allege that Defendants' conduct directly impaired core activities, they have standing.**

Because "standing to maintain a suit implicates the court's jurisdiction," this Court is "bound to address" it "before the merits." *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 715-16 (4th Cir. 2015).

Under the Fair Housing Act, standing extends "to the full limits of Article III." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). Thus, the "sole requirement" for standing under the statute "is the Art. III minima of injury in fact." *Id*. To meet this constitutional requirement, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Hippocratic Med.*, 602 U.S. at 380.

Organizations have standing "to sue on their own behalf" if they meet these "usual standards for injury in fact, causation, and redressability that apply to individuals." *Id*. at 393-394 (citing *Havens*, 455 U.S. at 378-79). In *Havens*, the Supreme Court held that "there can be no question" that a fair-housing organization suffered injury-in-fact based on allegations that an apartment owner's actions (falsely telling Black renters that no apartments were available) "perceptibly impaired" the organization's mission (which included counseling homeseekers to foster equal access to housing) and consequently drained its resources. 455 U.S. at 379. In *Hippocratic Medicine*, the Supreme Court reaffirmed *Havens*, explaining that the fair-housing organization in *Havens* had standing because the defendant's actions "directly affected and interfered with [the plaintiff's] core business activities" of providing counseling and referrals for homeseekers. 602 U.S. at 395. In contrast, the medical-association plaintiffs in

*Hippocratic Medicine* did not have standing to challenge the government's approval of an abortion drug because they did not prescribe or use the drug, instead having only principled objections to its use by others, so the government's action had not "imposed any…impediment to the medical associations' advocacy businesses" like the impediment imposed in *Havens*. *Id*.

After *Hippocratic Medicine*, this Court largely reaffirmed its precedents applying *Havens*, observing that its cases already recognized limitations on organizational standing articulated in *Hippocratic Medicine*. *Republican Nat'l Comm. v. N.C. State Bd. of Elections,* 120 F.4th 390, 396 (4th Cir. 2024) ("*RNC*"). For example, even before *Hippocratic Medicine*, this Court held that "mere expense" incurred by an organization does not confer standing "where the decision to divert resources is not in response to a threat to the organization's core mission." *RNC*, 120 F.4th at 396 (citing *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012)). But it remains true that, when a defendant's action "perceptibly impairs an organization's ability to carry out its mission and consequently drains the organization's resources, there can be no question that the organization has suffered an injury-in-fact." *Id*. at 395-96 (citation modified).

Here, the allegations undoubtedly meet this standard. The mission of the fair-housing organizations, broadly stated, is to eliminate housing discrimination and promote equal-housing opportunity, integration, and access to safe, secure, and

healthy housing. ECF1:5, 10-22. They pursue this mission through core activities, including community-development work such as home maintenance, mobility retrofits, foreclosure-and-eviction prevention, downpayment assistance, and greenspace development; homeseeker counseling and referrals; training housing providers and industry officials on fair-housing practices; providing education and outreach; and investigating potential discrimination. *Id*. By tending to "perpetuat[e] the unlawful discrimination and segregation [the organizations] use their limited resources to dismantle," ECF1:9, Defendants' actions posed a "threat to [their] core mission." *RNC*, 120 F.4th at 396. And Defendants' actions "directly affected and interfered with [the organizations'] core business activities," *Hippocratic Med.*, 602 U.S. at 395, in at least three concrete ways—each of which alone confer standing.

First, Defendants' conduct interfered with the organizations' community-development work to strengthen and enhance communities of color. The organizations have spent decades investing millions of dollars in grants, providing technical assistance, and engaging in other work to promote owner occupancy, improve property maintenance, stop foreclosures, and beautify these communities so they would be more stable, healthy, desirable, and inclusive places to live. ECF1:15-16, 69-88. Defendants' poor maintenance and marketing of homes in

18

these neighborhoods directly undermined these efforts, which are central to Plaintiffs' mission. ECF1:66, 70, 100-101.

Second, Defendants have hindered the organizations' ability to provide homeseeker counseling and referrals. The organizations counsel homeseekers as a way to promote homeownership to stabilize and integrate communities. ECF1:14-15, 17-20. Defendants' shoddy maintenance decreased the desirability of communities of color and the appeal and availability of housing in them, making it harder to direct homeseekers there, thus making those homes more likely to fall into the hands of investors—a result well known to destabilize communities. ECF1:101-102.

Third, because Defendants' conduct threatened the organizations' core mission, the organizations diverted funds and staff from other core activities to counter that conduct. Plaintiffs spent considerable resources on their investigation into the discriminatory conduct, ECF1:68-93, and they developed educational materials, created public-service announcements, met with government officials, and trained banks and real-estate agents—all to counter Defendants' conduct. ECF1:67-93. Consequently, Plaintiffs had to forego other core activities, diverting resources from activities like trainings for lenders and housing providers and outreach to underserved communities. ECF1:68-72, 80, 83, 86, 90-92.

19

These allegations are on all fours with *Havens*. In *Havens*, as here, the fair-housing organization alleged that the defendant's discrimination threatened its mission (ensuring equal access to housing) by interfering with a core activity employed to achieve that mission (counseling homeseekers) and forced the organization to "devote significant resources to identify and counteract the defendant's" conduct. 455 U.S. at 379. Thus, as in *Havens*, "there can be no question that" the organizations here have "suffered injury in fact." *Id.*

This Court's recent decision in *RNC* confirms that the fair-housing organizations here have standing. In *RNC*, two Republican organizations whose core activities included voter outreach and election security sued a board of elections for refusing to strike certain voters from voting rolls. 120 F.4th at 396-97. The organizations alleged that this refusal impaired one of their core activities, voter outreach, because they could not tell who would be able to vote and were forced to divert resources from outreach to combat the alleged election-security failure. *Id.* at 397. As a result, the "case involve[d] more than simply an organization's efforts to 'spend its way into standing.'" *Id.* at 396 (citing *Hippocratic Med.*, 602 U.S. at 394). Exactly so here: the organizations allege that Defendants' discrimination directly impaired their core activities of community development and homeseeker counseling and forced them to divert resources from core activities to combat Defendants' conduct. "Under Supreme Court precedent,

20

and that of this [C]ourt, these allegations suffice to allege organization injury under Article III." *Id*. at 397.

In a case brought by 18 of the 20 organizational plaintiffs here against Deutsche Bank and its servicers, similarly challenging the discriminatory maintenance and marketing of REOs, a district court found standing under *Havens* and *Hippocratic Medicine* after an in-depth analysis. *NFHA v. Deutsche Bank Nat'l Tr.*, No. 18-cv-839, 2025 WL 975967, at *8 (N.D. Ill. Mar. 31, 2025) ("*Deutsche Bank*"). That court found—based on very similar facts—that the defendants' "discriminatory REO practices limited the available housing stock for the people [the plaintiffs] serve" and so "impaired plaintiffs' ability to assist clients in finding suitable homes." *Id*. at *7. Thus, the defendants' conduct did not set back abstract social interests, as in *Hippocratic Medicine*, but "perceptibly impaired [Plaintiffs'] core counseling activities," as in *Havens*. *Id*. at *8.[1]

---

[1] Since *Hippocratic Medicine*, numerous other courts have similarly found organizational standing when, like here, a defendant's conduct impacted the organization's core activities. *See, e.g.*, *Caicedo v. DeSantis*, No. 6:23-cv-2303, 2024 WL 4729160, at *5 (M.D. Fla. Nov. 8, 2024) (non-profit whose core work included facilitating civic engagement had standing to challenge removal of State Attorney because her removal caused many voters to "[feel] as if their votes did not matter"); *S.C. State Conf. of NAACP v. S.C. Dep't of Juv. Just.*, No. 22-cv-1338, 2024 WL 5153170, at *1, *6 (D.S.C. Dec. 18, 2024) (non-profit whose core work included representing juveniles in custody had standing to challenge confinement conditions because "juvenile clients show up to attorney visits sleep-deprived, exhausted, and anxious such that they struggle to focus") (citation modified)*; Get Loud Arkansas v. Thurston*, No. 5:24-cv-5121, 2024 WL 4142754, at *6-7 (W.D. Ark. Sept. 9, 2024)

The district court here erred in concluding otherwise. In finding that the harms here "parallel the harms" found insufficient in *Hippocratic Medicine*, the court incorrectly considered only the costs of the organizations' investigation and not the direct impact of Defendants' conduct on the organizations' core activities of community development and counseling. ECF380:14-15. Only by ignoring relevant allegations could the court conclude that the organizations did not show "direct injuries to their preexisting core business activities that are separate and apart from their response to Defendants' actions." ECF380:15.

The court similarly erred in finding that the organizations' expenditure of resources on their investigation did not contribute to standing because it was "not triggered by a specific action by Defendants" and was "in furtherance of [their] mission." ECF380:16. In fact, the drain on the organizations' resources was squarely in response to serious threats posed by Defendants' conduct. The organizations began their investigation "in response to complaints, public outcry, and industry trends and observations regarding the maintenance of foreclosed properties" in communities of color, ECF1:6, then expanded the investigation only after a meeting with Bank of America made clear that the bank "would not improve" its REO practices. ECF1:53. When driven by a defendant's unlawful

---

(non-profit whose core work included registering voters had standing because rule requiring wet signatures on voter-registration application impacted its work).

conduct, such a drain of resources away from some core activities *towards* other mission-driven work countering the defendant's conduct constitutes injury. That was exactly the case in *RNC*: the plaintiffs had to divert resources away from one core activity (voter outreach) towards another core activity (combatting election fraud) to counter the defendant's alleged election-security failures. *RNC*, 120 F.4th at 397.[2]

The court also erred in dismissing the organizations' harm based on how they might remedy the frustration to their mission. ECF380:17. Specifically, the court looked at the organizations' position (in briefing on available remedies) on the amount of nonpecuniary damages necessary to fix the harm to their mission. ECF380:17. According to the court, the organizations lacked standing because their "plans for using any prospective recovery cannot serve as a measure of existing injury in fact." ECF380:18 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013)). But the organizations never asserted standing on that basis. Rather, their standing is based on the impairment of core activities (such as community development and counseling) and consequent drain on resources that already

---

[2] By the district court's logic, organizations would have to divert resources to activities *outside* their mission to have standing. But non-profits are generally prohibited from engaging in such activities. *E.g.* 26 C.F.R. § 1.501(c)(3)-1(c)(1). No organization would have standing under this standard.

occurred. Such injury squarely establishes standing under *Havens*, *Hippocratic Medicine*, and *RNC*.

Finally, the court erred in finding that Plaintiffs' harm was too attenuated to confer standing by mistakenly relying on case law about whether proximate cause exists to state a claim for damages. ECF380:18-19. The court cited the Supreme Court's analysis in *Bank of America Corp. v. City of Miami* regarding whether "the distance between [the alleged] violations and" alleged harms was "simply too great to entitle the City to collect damages," 581 U.S. 189, 194 (2017), as well as an opinion in *Deutsche Bank* analyzing whether NFHA could "seek damages" for various harms, not whether NFHA had standing, 2019 WL 5963633, at *6-8 (N.D. Ill. Nov. 13, 2019).[3] ECF380:18-19. The proximate-cause standard for damages and the traceability standard for standing are distinct, however, and the latter is more lenient. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct"). Here, Plaintiffs' allegations of harm are traceable to Defendants' discriminatory conduct.

---

[3] As explained above, the district court in *Deutsche Bank* ultimately found that the fair-housing organizations did have standing. 2025 WL 975967, at *7-8.

If there were any doubt that standing exists, the proposed amended complaint removes it by adding specificity to how Defendants' conduct impaired the organizations' core activities. The proposed amended complaint describes in more detail the organizations' counseling and referral services and how the discrimination frustrated that activity by reducing available housing stock for referrals and making the neighborhoods less desirable. ECF388-1:13-14, 73-76, 82-84. It also adds specificity to the community-development work the organizations undertook to support owner occupants (*e.g.*, foreclosure prevention, accessibility retrofits, and maintenance) and beautify and counter negative stereotypes in communities of color, and how Defendants' discrimination undermined this work by creating blight and unattractiveness that bolsters negative stereotypes and perpetuates segregation. ECF388-1:14-15, 73-78, 83-85, 97-98. And it elaborates on how core activities like education and outreach were impaired by the diversion of funds and staff to counteract the discrimination. ECF388-1:80. These allegations further cement that the fair-housing organizations have standing.

### b.    The court erred by denying leave to amend the complaint.

When the court reversed its holding on standing because it perceived deficiencies in the complaint following *Hippocratic Medicine*, it should have granted leave to amend. A party may amend its pleading at any time "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The

"Fourth Circuit policy" is to "liberally allow amendment." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022). Thus, leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation omitted). The district court erred when it found prejudice and futility.

First, when new allegations "add specificity" to "matters already contained in the complaint," prejudice does not exist. *Edwards*, 178 F.3d at 243. Because the new allegations flesh out how Defendants' conduct impaired the organizations' core activities, a matter already in the complaint, prejudice "could hardly flow." *Id*. *See also Davis v. Piper Aircraft Corp*., 615 F.2d 606, 613 (4th Cir. 1980) (amendment not prejudicial "[b]ecause defendant was from the outset made fully aware of the events giving rise to the action").

The court abused its discretion when it found otherwise. It found prejudice because "the proposed amended complaint introduces significant new facts," so in the court's view, "[a]dditional discovery would be inevitable." ECF394:7. In fact, additional discovery on standing may not be necessary, since the new allegations only add detail to existing matters. But if it were, granting leave would still be proper. Plaintiffs moved to amend only because the court, having previously found

26

that the original complaint conferred organizational standing, reversed itself after

*Hippocratic Medicine*. ECF380:9-10. Given the court's change in position, it

should have allowed amendment, even if that might require additional discovery.

ECF393:13-14; *see Fair Hous. Ctr. of Metro. Detroit v. Singh Senior Living*, 124

F.4th 990, 993 (6th Cir. 2025) (despite district court's grant of summary judgment

for defendants, remanding case post-*Hippocratic Medicine* so district court could

"ensure that" fair-housing-organization plaintiff "has a fair opportunity to develop

the record on defendants' alleged interference with [its] core business activities");

*Fair Hous. Ctr. of Metro. Detroit v. Am. House Grosse Pointe, LLC*, No. 23-2051,

2025 WL 66747, at *1 (6th Cir. Jan. 10, 2025) (same).

    Second, amendment would not be futile. Amendment is futile where the

proposed pleading "would not survive a motion to dismiss." *Save Our Sound OBX,*

*Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019). Here, the amended

complaint contains sufficient standing allegations to survive a motion to dismiss, as

described in the previous section. The district court did not find otherwise.

ECF394:5. The court nonetheless found futility only because it decided for

Defendants on the merits. ECF394:7-8. Because that decision should be reversed,

as explained below, the proposed amendment is not futile.

**II.    The district court erred in granting judgment for Defendants on the disparate-impact claim.**

    **a.    Defendants did not meet their burden at step two.**

In holding that Defendants met their burden at step two, the court made several critical mistakes. First, the court wrongly required that Defendants meet only a burden of production rather than a burden of proof. Second, the court wrongly held—reversing its prior holding—that failures to act could not support a disparate-impact claim (and so need not be justified at step two). Third, the court erred in finding that Defendants' justifications met even a burden of production, let alone the applicable burden of proof.

        *1.    The court applied the wrong standard.*

To prevail on step two of a disparate-impact claim, a defendant must prove that the challenged policies are "necessary to achieve a valid interest." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 91 F.4th 270, 277 (4th Cir. 2024), *cert. denied*, 145 S.Ct. 172 (2024) ("*Reyes II*"). "The 'touchstone' of Step Two is "'business necessity.'" *Id*. (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)). To meet this standard, the defendant must demonstrate "that the policy serves, in a significant way, its legitimate interests." *Id*. (internal quotation marks omitted).

A defendant's burden at step two is one of proof rather than production. As the Supreme Court explained in *Inclusive Communities*, defendants must "be

allowed to maintain a policy if they can *prove* it is necessary to achieve a valid interest." 576 U.S. at 541 (emphasis added). This Court has followed the Supreme Court's instruction and imposed a burden of proof on defendants at step two. *See Reyes II,* 91 F.4th at 277 ("a housing policy can stand if the landlord can prove it is necessary to achieve a valid interest"); *id.* at 280 (defendant did not meet "its burden to establish that the Policy served a legitimate interest. Proof schemes depend on record evidence."); *Reyes I*, 903 F.3d at 424 ("Under the second step, the defendant has the burden of persuasion....") (internal quotation marks omitted).

Other appellate courts have also held defendants to a burden of proof at step two. *See Fair Hous. Ctr. of Wash. v. Breier-Scheetz Props., LLC*, 743 Fed. Appx. 116, 118 (9th Cir. 2018) (defendant did not "carry its burden of proof"); *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 617 (2d Cir. 2016) (At step two, "the burden shifts to the defendant to prove that its actions furthered . . . a legitimate, bona fide governmental interest . . .") (internal quotation marks omitted); *Inclusive Communities Project, Inc. v. Texas Dep't of Hous. & Cmty. Affs.*, 747 F.3d 275, 282 (5th Cir. 2014), *aff'd*, 576 U.S. 519 (2015) ("[T]he defendant must then prove that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests...."); *Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth.*, 417 F.3d 898, 901 (8th Cir. 2005) (defendant "met its burden to prove that

any disparate impact was justifiable as necessary to achieve legitimate policy objectives").[4]

It stands to reason that courts have imposed a burden of proof on defendants in Fair Housing Act cases, since the same standard applies under Title VII of the Civil Rights Act of 1964. *See, e.g.*, *Cuthbertson v. Biggers Bros.*, 702 F.2d 454, 461 n.3 (4th Cir. 1983) ("defendant has the burden of proof" at step two); *Phillips v. Cohen*, 400 F.3d 388, 398 (6th Cir. 2005) (when Congress amended Title VII in 1991, it "clarified that if the plaintiff meets" their burden at step one, "the burden of *persuasion,* not just the burden of production, shifts to the defendant"). Courts interpreting the Fair Housing Act look to Title VII because the two statutes "employ similar language and are part of a coordinated scheme of federal civil rights laws enacted to end discrimination." *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 537 (6th Cir. 2014) (internal quotation omitted). Thus, "similar claims" under the two laws "generally should receive similar treatment." *Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cnty. Metro Hum. Rels. Comm'n*, 508 F.3d 366, 373 (6th Cir. 2007). And as the Supreme Court explained in this

---

[4] The Ninth Circuit has sometimes imposed a burden of production, but in doing so has relied on a Title VII standard that Congress clarified was incorrect in 1991. *See Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 967 (9th Cir. 2021) (relying on *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989)).

context, the step-two standards under both laws are "analogous." *Inclusive Cmtys.*, 576 U.S. at 541.[5]

The district court incorrectly applied a burden of production at step two based on a misreading of the cases it cited. ECF380:34. The court first cited *Inclusive Communities* and *Reyes II*. But as explained above, in *Inclusive Communities*, the Supreme Court stated that the Fair Housing Act and Title VII standards are analogous, so a policy can stand if defendants "prove it is necessary to achieve a valid interest," 576 U.S. at 541, and in *Reyes II* this Court followed *Inclusive Communities* and applied a burden of proof. 91 F.4th at 277, 280. The third case cited by the district court, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), involved a disparate *treatment* claim, which uses a different burden-shifting framework that imposes only a burden of production at step two.

---

[5] The U.S. Department of Housing and Urban Development (HUD), the agency tasked with implementing the Fair Housing Act, also concluded that defendants bear a burden of proof at step two. 12 C.F.R. § 100.500(c)(2). As the agency explained when codifying the disparate-impact standard in a 2013 regulation, this is consistent with case law under the Fair Housing Act and overlapping anti-discrimination statutes and does not require either party to prove a negative. *See* Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 FR 11460, 11473-74 (Feb. 15, 2013). In 2020, HUD promulgated a rule that would have altered the burden-shifting framework, but that rule was enjoined and HUD reinstated the 2013 rule before the 2020 rule took effect. *See* Reinstatement of HUD's Discriminatory Effects Standard, 88 FR 18450 (Mar. 31, 2023). Despite its changes in position, HUD's 2013 reasoning remains sound. In any event, when this Court adopted a burden of proof for defendants at step two, it did so by following *Inclusive Communities* rather than the HUD rule. *Reyes I*, 903 F.3d at 424 n.4.

*See Segar v. Smith*, 738 F.2d 1249, 1266-67 (D.C. Cir. 1984) ("Functionally the disparate treatment and disparate impact models have different aims, and the proof sequences associated with each reflect these differences."). Finally, the court cited *EEOC v. Joint Apprenticeship Committee of the Joint Industry Board of the Electrical Industry*, 186 F.3d 110, 120 (2d Cir. 1998), but the Second Circuit has since made clear that the applicable standard in Fair Housing Act cases is a burden of proof. *See, e.g.*, *Mhany Mgmt.*, 819 F.3d at 617.

### 2. The court also erred in concluding that failures to act did not have to be justified at step two.

If a plaintiff satisfies step one, a defendant must justify all "the practices with disparate impact." *Phillips*, 400 F.3d at 398; *see also, e.g.*, *Segar*, 738 F.2d at 1272 (If plaintiffs successfully show that "several particular employment practices" "have an adverse effect," they would "force [defendant] to prove the business necessity of the challenged practices.").

Here, Plaintiffs challenged ten policies and practices with the following key aspects:

- Bank of America gave Safeguard wide discretion to maintain properties, without providing non-discrimination training, monitoring for discrimination, or maintaining adequate quality control. Bank of America also gave wide discretion to third-party asset managers

responsible for marketing and selling the properties, including whether to repair a property or sell it as-is.

- Safeguard, in turn, underpaid and minimally supervised its property-maintenance vendors (including by relying on photos for quality control), while rewarding timeliness over quality and not providing non-discrimination training or monitoring for discrimination.

- Vendors were permitted to decide whether and how to board, rather than fix, broken windows and could make maintenance decisions based on their subjective perception of crime or vandalism in a neighborhood.

ECF182:53-72.

At their core, nearly all of these policies fall into two buckets: (1) granting discretion for home maintenance and marketing (such as allowing vendors to make maintenance decisions based on their perceptions of neighborhood crime); and (2) failing to supervise that discretion (such as not providing fair-housing training or monitoring for discrimination).

Both types of policies can form the basis of a disparate-impact claim. *See, e.g.*, *Wal-Mart*, 564 U.S. at 355 ("giving discretion" can support a disparate-impact claim); *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990 (1988) (recognizing disparate-impact claim based on policy of "unchecked" discretion); *Nucor*, 785

33

F.3d at 916 (granting discretion for promotions and failing to respond to
discrimination complaints were actionable); *Deutsche Bank,* 2018 WL 6045216, at
*12 (N.D. Ill. Nov. 19, 2018) ("abdicating" responsibility to "undertrained and
underexperienced" entities constituted policy for disparate-impact liability); *NFHA
v. Fannie Mae*, 294 F. Supp. 3d 940, 948 (N.D. Cal. 2018) ("policy of delegation of
discretion or failure to supervise" formed basis of disparate-impact claim).

Consistent with this case law, the district court initially and correctly
concluded that Plaintiffs identified an actionable policy that included both the
"delegation" and "failure to supervise" components. ECF235:30 (rejecting
Defendants' argument that "plaintiffs' theory is incognizable because it does not
identify a 'policy' but instead calls out, at best, the 'lack of a policy'"). But when
granting summary judgment over two years later, the court reversed course,
concluding that "several of the ten 'policies,' those couched as 'failures' to do
something, object to 'the lack of a policy,' which is not actionable." ECF380:30.
As a result, the court did not assess whether Defendants' practices it considered
failures to supervise served any legitimate interests. Instead, the court limited its
analysis "[o]n the supervision side" to Defendants' reliance on photos for quality
control and failed to consider other practices, such as not providing fair-housing
training or monitoring for discrimination. ECF380:38-39.

Such a reversal, without a change in law or new facts, is improper. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-816 (1988). And in reversing course, the district court ran afoul of this Court's ruling that a specific practice for purposes of disparate-impact liability "can comprise affirmative acts *or inaction.*" *Nucor*, 785 F.3d at 916 (emphasis added). In *Nucor*, a Title VII case brought by Black steel workers to challenge their employer's promotion policies and practices, this Court held that the employer's grant of discretion to supervisors in deciding promotions and "a practice of *inaction* by the general manager who ignored the evidence" of discrimination could establish a disparate-impact claim. *Id*. at 916-17.[6] Thus, in this case, Defendants' granting-of-discretion and failing-to-

---

[6] Other courts agree that inaction in the form of failing to implement safeguards or supervise discretion can underlie a disparate-impact claim. *See, e.g.*, *Chalmers v. City of New York*, No. 20 CIV. 3389, 2022 WL 4330119, at \*13-14 (S.D.N.Y. Sept. 19, 2022) (certifying class based on policies including "City's decision not to monitor differences in the pay of similar employees" for racial disparities); *Richardson v. City of New York*, No. 17-CV-9447, 2018 WL 4682224, at \*10 (S.D.N.Y. Sept. 28, 2018) (complaint stated disparate-impact claim under state law by challenging defendant's "failure to adopt or systematically implement" practices including monitoring decisions for racial disparities) (citation modified); *Deutsche Bank,* 2018 WL 6045216, at \*12; *Fannie Mae*, 294 F. Supp. 3d at 948 (N.D. Cal. 2018). Although the district court relied on *City of Los Angeles v. Wells Fargo & Co.*, No. 213CV09007ODWRZX, 2015 WL 4398858 (C.D. Cal. July 17, 2015), *aff'd*, 691 F. App'x 453 (9th Cir. 2017), in holding otherwise, this unpublished, out-of-circuit case conflicts with this Court's holding in *Nucor*, 785 F.3d at 916, and misinterprets *Inclusive Communities* as requiring identification of an affirmative policy or practice.

supervise practices are both actionable, as the district court initially held in 2023,

so both must be justified at step two.

### 3. Because Defendants did not undisputably prove that the challenged policies and practices served their legitimate interests, they failed to meet their burden at step two.

Defendants failed to undisputably prove that the challenged policies served

their legitimate interests for three independent reasons: (1) they did not justify the

challenged practices, but instead defended strawman practices that are not at issue;

(2) even for those strawman practices, their justifications were insufficient as a

matter of law because they were not supported by evidence; and (3) their

unsupported justifications were materially disputed (which the court recognized in

denying Plaintiffs' cross-motion for summary judgment).

First, Defendants did not justify the policies actually at issue, but instead

denied the existence of virtually all of them. For example, they expressly denied

granting significant discretion to asset managers to decide how to maintain and

market properties, granting discretion to vendors to make maintenance decisions

based on the vendor's perception of an area, relying heavily on photographs to

validate the quality of work, failing to provide non-discrimination training, and

failing to assess compliance with fair-housing laws. ECF285-3:9-12, 16-18;

36

ECF285-4:9-10. When denying that these policies and practices existed,

Defendants refused to identify any legitimate interests they might serve.[7]

Instead of requiring Defendants to justify the challenged policies, the district

court erroneously allowed them to justify noncontroversial policies that Plaintiffs

do not challenge. Bank of America justified "its retention of Safeguard" as

effective and efficient at maintaining homes in compliance with legal requirements

because "it is frequently advantageous to engage outside service providers with

specialized expertise." ECF285-3:16. Safeguard, in turn, listed objectives like

economic feasibility and code compliance for the practices of "utilizing

independent contractors" and "operating as a company that serviced properties for

clients throughout the United States." ECF285-4:6-8. Following suit, the court

found satisfactory Defendants' justifications for "hiring contractors" and "using

local independent contractors instead of employees." ECF380:34-37. But Plaintiffs

do not challenge the use of contractors; they challenge granting those entities wide

discretion to maintain homes with minimal supervision to prevent discrimination.

ECF311:24-25.

---

[7] Because it determined that several policies were "'failures' to do something" that
were "not actionable," the district court excused Defendants' refusal to identify
legitimate interests for these policies. ECF380:30-32. Even if the court's conclusion
were not foreclosed by *Brown v. Nucor*, Defendants refused to identify legitimate
interests not just for failures to act but also for affirmative grants of discretion.

As the court previously found, Plaintiffs "succeeded in providing enough evidence of a specific policy" to create a triable issue of fact on step one. ECF235:31. This policy was the granting of wide discretion with minimal supervision. *Id.*[8] Defendants are free to dispute or deny its existence (or the existence of any of its underlying components) at trial, and if they convince the jury, they will "never face[] th[e] justificatory burden" at step two. *Segar*, 738 F.2d at 1271. But to prevail on summary judgment at step two, Defendants must prove that the challenged practice served a legitimate interest. Because they did not even defend the challenged practice of granting discretion with minimal supervision, let alone undisputably prove that it served legitimate interests, the court erred in proceeding to step three. *See Reyes II,* 91 F.4th at 279 (not proceeding to step three "[b]ecause [defendant] did not meet its burden at Step Two").

Second, Defendants produced no supporting evidence to justify even the strawman policies of hiring contractors and operating nationwide that they chose to defend. Rather, they relied on conclusory assertions in interrogatory responses and deposition testimony, without any empirical support. In arguing that "hiring

---

[8] The district court initially described the policy as *undue* discretion without *appropriate* supervision, ECF235:35-36, but later took issue with the "inherent advocacy" of that framing. ECF380:31. The terms "undue" and "appropriate" are not necessary to describe the challenged practices, which at their core are the delegation of discretion with minimal supervision.

contractors is more efficient than employing full-time workers," they cited only to deposition testimony that Bank of America contracted with Safeguard "[p]robably for efficiency gains" and their assertion in an interrogatory response that their practices "are intended to serve the objectives of effectively and efficiently" maintaining homes. ECF299-1:25, 37-38; ECF299-9:7. Similarly, Defendants claimed they had justified their practice of "having centralized operations to manage their vendors" but cited only to a conclusory assertion in an interrogatory response that centralized operations allow them to operate nationally. ECF299-1:25.

These unsupported assertions fall well short of Defendants' step-two burden. Courts cannot accept "bare or 'common-sense'-based assertions of business necessity and instead require[] some level of empirical proof." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 240 (3d Cir. 2007). Thus, courts routinely find that take-my-word-for-it assertions like those here do not satisfy a defendant's step-two burden. In *Fair Housing Center of Washington v. Breier-Scheetz Properties, LLC*, for example, the Ninth Circuit affirmed summary judgment for the plaintiff because "[t]he only evidence" the defendant submitted at step two—"a declaration by part-owner Frederick Scheetz uncorroborated by any independent expert or supporting documentation—is too hypothetical and speculative to carry its burden of proof." 743 F. App'x at 118 (internal quotation marks omitted). And in *Reyes II*,

this Court reversed summary judgment for the defendant because the record was "simply too thin to support" the defendant's claimed interest in avoiding criminal liability. 91 F.4th at 279. *See also, e.g.*, *Fair Hous. Just. Ctr., Inc. v. Pelican Mgmt., Inc.*, No. 18-cv-1564, 2023 WL 6390159, *15 (S.D.N.Y. Sept. 29, 2023), *aff'd*, No. 23-cv-7348, 2025 WL 251723 (2d Cir. Jan. 21, 2025) (landlord's stated justification of reducing rent arrears failed because he produced no supporting evidence); *Pickett v. City of Clev.*, No. 1:19 CV 2911, 2023 WL 11987525, at *15 (N.D. Ohio Sept. 29, 2023) (denying summary judgment for defendant because it "fail[ed] to point to any evidence demonstrating that" the challenged policy "is effective or 'substantially related' to" its claimed interests).

Third, in addition to Defendants' asserted justifications not targeting the practices Plaintiffs actually challenged and being legally insufficient, they are also materially disputed—as the court recognized in denying summary judgment for Plaintiffs on the same issue. As discussed above, Defendants claimed their practices served the objectives of effectively and efficiently maintaining homes in compliance with legal requirements. But extensive evidence shows that their practices harmed, rather than served, these interests because the practices were inefficient, increased costs, resulted in poor quality control, and failed to address legal violations. ECF285-1:20-30. For example, their practices led to long delays in addressing code violations, which in turn led to tens of thousands of dollars in

fines. ECF285-1:20-22, ECF285-5:3-6, ECF285-6:6-23, ECF285-7:2, ECF285-9:2.

And Defendants' reliance on photos harmed, rather than served, their interest in

effective quality control because vendors' "creative photography" hid poor

workmanship. ECF285-1:28-30, ECF 183-4:11-12, ECF183-52:3-4.

Indeed, in considering some of this evidence, the district court found

"multiple disputes of fact that preclude summary judgment on step two."

ECF380:41. The court found disputes "to be assessed by the factfinder at trial"

over whether Defendants' delegation policies saved costs, ECF380:37, a

"quintessential factual dispute that is inappropriate for summary judgment" as to

whether Defendants' reliance on photos served their asserted interest of effective

quality control, ECF380:39, and a "factual dispute about whether" Defendants'

practices harmed their interests by causing property defects. ECF380:40.

Despite finding material factual disputes at step two, the court nonetheless

advanced to step three because it erroneously imposed on Defendants only a

burden of production. ECF380:32-33.[9] Defendants' conclusory justifications fail to

---

[9] In their motion for partial summary judgment, Plaintiffs argued that Defendants bear a burden of proof at step two. ECF285-1:15 (Defendants "must prove" they meet the step-two standard). While in their reply brief Plaintiffs did not dispute that Defendants bore only a burden of production, this Court should still apply a burden of proof because "parties cannot waive the proper standard of review by failing to argue it or by consenting to an incorrect standard." *United States v. Venable*, 943 F.3d 187, 192 (4th Cir. 2019). *See also, e.g.*, *Moody v. NetChoice, LLC*, 603 U.S. 707, 779-780 (2024) (Alito J., concurring) (district court should not enjoin a law unless it analyzed the proper legal test, even if defendant had acquiesced, because

meet even this incorrect legal standard. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (burden of production requires enough evidence to allow the jury to decide in defendant's favor). And in weighing the evidence to determine whether Defendants meet their burden of proof, the jury might resolve the factual disputes found by the court in Plaintiffs' favor. The court's decision to proceed to step three (and grant summary judgment there) was therefore improper. *See Goodman v. Diggs*, 986 F.3d 493, 497-498 (4th Cir. 2021) (summary judgment is proper only if no material facts are disputed); *Reyes II*, 91 F.4th at 277-280 (reversing summary judgment for defendant because the evidence did not support defendant's proffered interest in the challenged practice); *Pickett*, 2023 WL 11987525, at *15 ("several issues of material fact" at step two precluded summary judgment for defendant).

In short, because Defendants justified strawman practices not at issue and failed to produce sufficient or undisputed evidence to justify even those, the district

---

"[i]t is one thing to allow parties to forfeit claims, defenses, or lines of argument; it would be quite another to allow parties to stipulate or bind [a court] to the application of an incorrect legal standard"); *United States v. Tony*, 121 F.4th 56, 70 n.10 (10th Cir. 2024) (defendant did not waive applicable legal principle on appeal by "failing to invoke it before the district court"); *Hamilton v. Promise Healthcare*, No. 23-30190, 2023 WL 6635076, at *3 n.6 (5th Cir. 2023) (same); *Kairys v. S. Pines Trucking, Inc.*, 75 F.4th 153, 160 (3d Cir. 2023) (same).

court should have granted Plaintiffs' motion for summary judgment on step two, or at a minimum denied summary judgment for Defendants.

> **b.    Even if it were proper for the district court to reach step three of the disparate-impact claim, triable issues of fact at that step preclude summary judgment.**

If a defendant satisfies step two, a plaintiff still prevails if they show "that the [defendant's] interest could be served through less discriminatory means." *Reyes II*, 91 F.4th at 275. A plaintiff must demonstrate only that there is "*an* available alternative…practice that has less disparate impact and serves the [entity's] legitimate needs." *Inclusive Cmtys.*, 576 U.S. at 533. Here, Plaintiffs put forward substantial evidence, including testimony from three experts, showing alternative practices Defendants could adopt that would serve their needs with less discriminatory impact than their current practice of nearly unfettered discretion. ECF311:30-38.

For one, according to a property-preservation expert with vast experience in the field, a "local model" where vendors hired directly by Bank of America are supervised more closely would be more effective and less discriminatory. ECF299-84:7-12. Under this model, vendor work is monitored with in-person visits by real-estate agents and the bank, so is more effective at making sure work is done promptly and properly without regard to race. *Id*.

Or Bank of America could continue to rely on Safeguard as an intermediary but conduct more frequent, unannounced, in-person inspections, which would better serve their effectiveness and efficiency goals and be less discriminatory by protecting against the corner-cutting in communities of color that occurred here. ECF285-8:9-10, ECF299-84:11.

As another alternative, Safeguard could hire vendors and real-estate agents more knowledgeable about a home's neighborhood. Doing so would better serve Defendants' interests in effectiveness and efficiency while being less discriminatory because, under Defendants' current practices, homes were not properly maintained or marketed because of misperceptions that communities of color were too dangerous to properly service. ECF285-8:11.

Expert testimony also shows that adopting a policy of always boarding windows with clear sheets (instead of granting discretion to board with plywood) would meet Defendants' interests in securing their properties, since clear boarding is readily available, effective, and would be less discriminatory because it would avoid plywood boarding's "particularly pernicious impact on the surrounding neighborhood." ECF285-29:18.

Defendants could also effectively respond to a toll-free phone number for reporting complaints about property maintenance. This, too, would serve their interests in efficiency and effective quality control and be less discriminatory

44

because it would allow them to avoid the months-long delays in responding to issues in communities of color that occurred here. ECF285-8:10, ECF183-37.

Defendants could also provide fair-housing training or monitor for racial disparities, which would not detract from their interests but would be less discriminatory because vendors would know they cannot cut corners in communities of color (and Defendants would find out and take corrective action if they were). ECF295-23:10; ECF183-52:3-5 (testimony from former Safeguard vendor that vendors cut corners more often in communities of color).

By putting forth several practices Defendants could use to meet their needs with less of a disparate impact, supported by testimony from three experts, Plaintiffs exceeded their burden. *See Inclusive Cmtys.*, 576 U.S. at 533 (plaintiff must show only one less discriminatory alternative); *EEOC v. Dolgencorp, LLC*, No. 13-C-4307, 2017 WL 7310078, at *4 (N.D. Ill. Dec. 11, 2017) (identification of less discriminatory alternative "falls within the province of the experts"). The district court made several mistakes when it found otherwise.

First, the court rejected alternatives, including fair-housing training and monitoring for disparities, because, in its view, "a new policy altogether" cannot "satisfy step three." ECF380:50. According to the court, a new practice that addresses a defendant's failure to do something can never, as a matter of law, be a less discriminatory alternative under step three. There is no legal support for this.

To the contrary, Defendants' failures to provide fair-housing training and monitor for disparities are cognizable under *Brown v. Nucor*, as explained above, and alternatives to failures to act necessarily require that defendants do something new.

Second, the court usurped the role of the jury by finding that proposed alternatives were not distinguishable from Defendants' current practices, would not be as effective or efficient, or would not be less discriminatory—despite Plaintiffs' evidence to the contrary. For example, the court found that Defendants "have maintained a toll-free number" to field complaints about REOs, without addressing Plaintiffs' evidence that complaints went unanswered or took months to address. ECF380:50. Similarly, the court was not convinced that "the 'boots-on-the-ground' approach of [ Plaintiffs'] proposed local model differs from Defendants' current method of operation" or would lead to an "attitude adjustment" that reduced discrimination. ECF380:43-44. But an expert explained that a local model's "unannounced monthly quality control visits" and "regular in-person assessments" enables maintenance issues to be "promptly and properly addressed," whereas Defendants' reliance on "automated or remote systems to validate work," like reviewing vendor photographs, "fail[s] to ensure that preservation and maintenance work is timely and properly performed" without regard to race. ECF299-84:7-11. These advantages of a local model apply even if Defendants continue to use the same vendors. *Id*. For yet another example, the court rejected that alternatives

46

would be equally effective at meeting Defendants' goals of efficiency and centralization because Defendants are "national," whereas the alternatives could "more easily [be] employed by local banks operating on a smaller scale." ECF380:45-47. But expert testimony shows that the proposed alternatives not only *can* be employed by large nationwide entities, they *are* employed by such institutions, including Freddie Mac and Wells Fargo. ECF299-84:7.

The court did not exclude this expert testimony showing less discriminatory alternatives. To the contrary, it explicitly found the only expert testimony on less discriminatory alternatives that was challenged to be admissible and relevant. ECF380:28. Thus, the jury—not the judge—should assess its believability. *See United States v. Griley*, 814 F.2d 967, 975 (4th Cir. 1987) ("jury was entitled to credit [the expert's] testimony").

Third, the court faulted Plaintiffs for not providing the costs of proposed alternatives. ECF380:47. But Defendants must first meet their burden of proving that the challenged practices furthered a cost-saving interest before Plaintiffs must show an equally effective alternative. Defendants provided no evidence on the costs of the challenged policies (or of changing them). The court, then, improperly required Plaintiffs to establish an equally cost-effective alternative in the absence of any cost evidence from Defendants to use for comparison. *Cf. EEOC v. Schuster Co.*, No. 19-CV-4063-LRR, 2021 WL 1592668, at *2 (N.D. Iowa Apr. 13, 2021)

("plaintiff cannot be expected to proffer an equally effective, less discriminatory alternative until the defendant has established what it is that its screen or test does and how effective it is") (citation modified).

In sum, even if it were proper for the court to reach step three, Plaintiffs' evidence creates a triable issue of fact.

## III. The court wrongly granted summary judgment for Defendants on the intentional-discrimination claim.

A plaintiff can prove intentional discrimination "either [1] directly, through direct or circumstantial evidence, or [2] indirectly, through the inferential burden shifting method known as the *McDonnell Douglas* test." *Corey*, 719 F.3d at 325. If a plaintiff provides sufficient evidence under a direct method, "resort to the *McDonnell Douglas* method of proof is unnecessary." *Id.* Here, there is enough evidence under either method.

### a. Enough circumstantial evidence exists to establish intentional discrimination without burden shifting.

Under a direct method of proof, a plaintiff "must show either an acknowledgement of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004) (internal quotation omitted. Here, ample circumstantial evidence would allow a jury to find intentional discrimination.

48

First, a Safeguard vendor of seven years attested that jobs in communities of color "were not held to the same standard by Safeguard as in whiter areas."ECF183-52:4. The vendor was told he could cut corners (by mowing only a portion of a lawn and taking a picture of that portion) in "certain neighborhoods," which he saw was done more often in communities of color. ECF183-52:3-5. His conversations with Safeguard employees and other Safeguard vendors revealed that "Safeguard was aware that contractors tended to cut corners in African-American and Latino neighborhoods in ways that they did not in white neighborhoods." ECF183-52:5. And Safeguard sent contractors back to redo unsatisfactory work in White neighborhoods but not minority ones. ECF183-52:4. This evidence—especially together with the results of Plaintiffs' seven-year investigation showing widespread, statistically significant racial disparities in maintenance—could allow a jury to find discriminatory intent. *See, e.g.*, *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 259-261 (4th Cir. 2025) (evidence that minority plaintiff was held to a different standard was probative of discriminatory animus); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th

Cir. 1994) (systematic differences in treatment can be "sufficient by itself" to prove intentional discrimination).[10]

Second, Bank of America decided how to treat properties based on racially coded language. Safeguard's vendors, Bank of America's asset managers, and real-estate agents frequently referred to communities of color with terms like "high vandalism," "high crime," and "high drug/high gang activity"—contrary to crime statistics. ECF182:63-64, 82; ECF185-27:Row3088, 9042; ECF183-7-C:ColumnIW; ECF185-65-ECF185-78; ECF183-90. Bank of America relied on these racially charged stereotypes when deciding how to treat properties, such as selling a property in a community of color "as-is" instead of repairing it, against the advice of a loss analysis, after being told it was in a "high risk community."

---

[10] In an earlier opinion, the district court incorrectly noted that this vendor's declaration did not "demonstrate that Mr. Chappell worked on any of the properties at issue" or "had personal knowledge of Safeguard's operations or reputation in the relevant zip codes." ECF235:36. Plaintiffs identified disparities in three metropolitan areas in Texas, and Mr. Chappell's company "did lawn maintenance for properties maintained by Safeguard throughout Texas," including Bank of America REOs. ECF183-52:2. Mr. Chappell's declaration is based on his personal experience as a Safeguard vendor in Texas, his observations of Safeguard's conduct and work on properties maintained by Safeguard, and his conversations with Safeguard employees and other Safeguard vendors. ECF183-52:2-5. His personal observations are relevant beyond Texas because the company has "one uniform set of standards for its property preservation work throughout the United States" and "uniform training" for all of its contractors and employees. ECF285-4:8. Because the declaration is based on personal knowledge and contains admissible evidence, it can be considered. Fed. R. Civ. P. 56(c)(4).

ECF182:82; ECF183-90. A jury could find that reliance on such racially coded expressions shows discriminatory intent. *See, e.g.*, *Dandy*, 388 F.3d at 272 (racial remarks may show intent if they are made by those "who influence the decisionmaker…close in time to the" adverse decision); *Mhany Mgmt.*, 819 F.3d at 608-610 (racially charged code words may form basis of discriminatory intent claim); *Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Par.*, 648 F. Supp. 2d 805, 812 (E.D. La. 2009) ("[R]eferences to 'crime,' 'blight,' and 'quality of life' are similar to the types of expressions that courts . . . have found to be nothing more than 'camouflaged racial expressions.'") (quoting *Smith v. Town of Clarkton*, 682 F.2d 1055, 1066 (4th Cir. 1982)).

Third, Defendants were informed of the racial disparities in their REO maintenance—and did nothing in response: twice in 2012, Bank of America was informed of its racial disparities but took no corrective action, ECF182:82-83, ECF183-5:3-4, ECF183-91:3-5, ECF183-8:15-16, and Safeguard knew about Plaintiffs' investigation findings but also did not conduct an audit or take any other action in response, even though it typically audits inconsistencies in vendor work, ECF182:26, 83, ECF183-14:3-5, 11-16. This evidence, too, is indicative of discriminatory intent. *See, e.g.*, *Martin v. Emmanuel*, No. 19 CV 1708, 2019 WL 4034506, at *1, *5 (N.D. Ill. Aug. 27, 2019) (allegation that "the City knows that its shelters are disproportionately likely to turn away people with disabilities" and

"nonetheless failed to fix that disparity" stated a claim for intentional

discrimination under a deliberate-indifference theory); *Guan v. Long Island Bus.*

*Inst., Inc.*, No. 15-CV-2215, 2017 WL 11703860, at *13 (E.D.N.Y. Sept. 30, 2017)

(defendant's "knowledge of the pay disparity and . . . failure to take investigatory

or curative action" could make him liable for intentional discrimination); *Murthy v.*

*Ind. Univ. of Pa.*, No. 12-1194, 2013 WL 1363924, at *3 (W.D. Pa. Apr. 3, 2013)

(allegations that defendant failed to investigate or correct a pay disparity "state[d] a

plausible claim of discriminatory treatment"); *Williams v. Boeing Co.*, 225 F.R.D.

626, 636 (W.D. Wash. 2005) (liability for intentional discrimination depended on

whether defendant "knew that racial discrimination was occurring" from pay

disparities "and did nothing or not enough to remedy the problem."). *See also* 24

C.F.R. § 100.7(a)(1)(ii)-(iii) ("[f]ailing to take prompt action to correct and end a

discriminatory housing practice" of an employee, agent, or third-party, where the

defendant "knew or should have known of the discriminatory conduct," and, in the

case of a third-party, "had the power to correct it," renders the defendant liable

under the Fair Housing Act).

 The district court never considered the sufficiency of this evidence to prove

intentional discrimination without burden shifting. ECF380:53. Rather, the court

flatly dismissed a direct theory by asserting—mistakenly—that Plaintiffs "did not

plead any allegations of motive or intent beyond the statistics themselves." *Id*. In

fact, Plaintiffs described in detail this evidence of intentional discrimination in response to Defendants' first motion for summary judgment. ECF182:81-83.[11] Had the court considered the evidence, it should have denied summary judgment for Defendants on the intentional-discrimination claim.

### b. There is also enough evidence to show intentional discrimination using burden shifting.

Under *McDonnell Douglas* burden shifting, if a plaintiff establishes a prima facie case of disparate treatment, a "burden of production shifts to the defendant to show a legitimate non-discriminatory reason for its action." *Walker v. Richmond Newspapers, Inc.*, 843 F.2d 1389, *1 (4th Cir. 1988). If the defendant meets this burden, "the burden returns to the plaintiff to come forward with evidence that the defendant's asserted reason for its action is a pretext for its discriminatory motives." *Id*. Here, Defendants failed to meet their burden at step two, and even if they had, Plaintiffs produced enough evidence of pretext to preclude summary judgment.

In their motion for summary judgment, Defendants provided, in a single sentence, two catch-all non-discriminatory reasons: (1) "the same justifications that carried Defendants' burden under *Inclusive Communities*"; and (2) "all the other

---

[11] Plaintiffs cited this brief and incorporated it by reference into their briefing on the cross-motions for summary judgment on burden shifting. ECF285-1:8, ECF311:15, 39-42.

reasons for the purported disparity that have nothing to do with the policies alleged by Plaintiffs, such as 'the condition the properties were in when [Bank of America] got them.'" ECF299-1:55. In finding for Defendants on step two, the court agreed with the first rationale: "the business justifications Defendants offered to meet their burden under step two of the disparate impact framework, namely business efficiency and cost-control driven by HUD and investor guidelines, also suffice under the disparate treatment framework as the legitimate, nondiscriminatory explanations for Defendants' maintenance practices." ECF380:52.

The first rationale is misplaced in a disparate-treatment analysis. Business efficiency and cost-control are business objectives that can, in theory, justify a policy with a disparate impact; they cannot serve as non-discriminatory reasons for treating homes in communities of color more poorly. Put differently, the only way controlling costs could rationally explain why Defendants' maintenance of REOs in communities of color was worse is if they were trying to control costs only in those neighborhoods—in which case the explanation itself would be discriminatory.

Neither is the condition of the properties when the bank acquired them a non-discriminatory explanation. Original property condition is relevant to the step-one question of *whether* Defendants maintained properties in communities of color more poorly, not the step-two question of *why* they did so. In holding that Plaintiffs could

establish a prima facie disparate-treatment claim, the court already answered the step-one question. That is, the court rejected Defendants' argument that original property condition, rather than Defendants' actions, caused the racial disparities in property defects. ECF235:27 (observing that many of the maintenance failures, like blocked gutters, have nothing to do with original condition). Defendants' original-property-condition argument attempts to refute that they engaged in racially disparate property maintenance in the first place; it offers no non-discriminatory explanation for doing so.

Because Defendants have not produced evidence from which a jury could find that their differential treatment was not discriminatory, they failed to meet their step-two burden on the intentional-discrimination claim. *See St. Mary's Honor Ctr.,* 509 U.S. at 507, 509. The court therefore erred by proceeding to step three. *E.g., Chen-Oster v. Goldman, Sachs & Co.*, No. 10-cv-6950, 2022 WL 814074, at *28 (S.D.N.Y. Mar. 17, 2022) (plaintiff cannot "skip to the final step of" discrimination burden-shifting framework "without first carrying their burden" at step two).

The court also erred at step three by summarily concluding that "Plaintiffs have not adduced any evidence" of pretext. ECF380:52. "A plaintiff may establish pretext through two routes." *Wannamaker-Amos*, 126 F.4th at 257. "The first is offering evidence that the employer's justification is 'unworthy of credence.'" *Id.*

(citing *Reeves,* 530 U.S. at 143). "The second is adducing other forms of circumstantial evidence sufficiently probative of discrimination." *Id*. Here, Plaintiffs produced enough of both types of evidence, and certainly when considered together, to defeat summary judgment.

First, Plaintiffs' statistical evidence, in and of itself, can allow a jury to find that any purported non-discriminatory reasons that Defendants put forward are not believable. The Supreme Court has made clear that prima facie "evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual," and combined with cross-examination, may suffice for the plaintiff to prevail. *Burdine*, 450 U.S. at 255 n.10. In *Chuang v. University of California Davis, Board of Trustees*, for example, an Asian professor's prima facie case that he was well-qualified for a full-time position but was passed over for white professors precluded summary judgment at step three because it could lead a factfinder "to disbelieve" the defendant's non-discriminatory explanation. 225 F.3d 1115, 1127 (9th Cir. 2000). So, too, here. Defendants have failed to put forward evidence of a non-discriminatory explanation for their differential treatment, as described above. But even if they do, a jury could disbelieve their explanation because Plaintiffs' expert found that "no other variable or set of variables—besides race—can account for most of the" disparities. ECF235:8.

Second, other evidence shows that Defendants' explanations are not credible. For example, Defendants claim that efficiency somehow explains the racial disparities. Putting aside that efficiency in exterior maintenance cannot explain the worse treatment unless Defendants only tried to be efficient in communities of color—which would be discriminatory—this explanation is also refuted by evidence of long delays for repairs in communities of color. ECF285-1:20-21, ECF 285-5:3-6, ECF285-6:6-19, 21-23. Defendants also claimed that local ordinances explain differences in one aspect of differential treatment—boarding windows—but Plaintiffs produced evidence showing that Defendants *violated* local laws when boarding windows in some communities of color. ECF182:60. This evidence undermining the veracity of Defendants' purported explanations can, without more, allow a jury to find pretext. *Reeves*, 530 U.S. at 134 (if factfinder rejects nondiscriminatory reasons as unbelievable, it may infer "the ultimate fact of intentional discrimination" without additional proof of discrimination); *Wannamaker-Amos*, 126 F.4th at 257-58 (plaintiff met her burden to show pretext in multiple ways, including with evidence disputing non-discriminatory reason).

Third, the circumstantial evidence of intent described in Section III(a) above also shows pretext. That is, a jury could find discriminatory animus—and therefore pretext—based on the vendor testimony that Safeguard held communities of color

to a lower standard than White ones, the evidence that Bank of America made

decisions based on racially coded language, and the evidence that Defendants did

nothing after being informed of their racial disparities. *See Wannamaker-Amos*,

126 F.4th at 259 ("plaintiff may show pretext . . . by offering circumstantial

evidence of discrimination," which "often comes in the form of conduct or

circumstances probative of discriminatory animus").

Because Plaintiffs produced enough evidence of pretext, summary judgment

for Defendants on the intentional-discrimination claim was improper.

## IV.    The court abused its discretion by declining to exercise supplemental jurisdiction over the state-law claims.

The individual plaintiffs' nuisance claims stem from the same facts as the

federal claims. ECF1:110-111. The district court therefore has supplemental

jurisdiction. 28 U.S.C. § 1367(a). It declined to exercise that jurisdiction because it

resolved the federal claims. ECF394:10. Since judgment for Defendants on the

federal claims should be reversed, the court's decision to decline supplemental

jurisdiction should also be reversed. *See Vathekan v. Prince George's Cnty.*, 154

F.3d 173, 181 (4th Cir. 1998).

## CONCLUSION

For the foregoing reasons, this Court should find that the organizational

plaintiffs have standing and reverse either the district court's dismissal of the

organizations' claims, ECF381, or its denial of leave to amend the complaint,

ECF395. This Court should also reverse the district court's: (1) denial of Plaintiffs' motion for partial summary judgment on step two of the disparate-impact framework; (2) grant of Defendants' motion for summary judgment on Plaintiffs' disparate-impact and intentional-discrimination claims; and (3) failure to exercise supplemental jurisdiction over the state-law claims. ECF381, ECF395.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants respectfully request that this Court hear oral argument in this case. This appeal raises important issues regarding Article III standing for organizational plaintiffs and the frameworks for proving disparate-impact and disparate-treatment claims under the Fair Housing Act.

Respectfully submitted,

*/s/ Jessica P. Weber*
Jessica P. Weber
Andrew D. Freeman
Lauren A. DiMartino
Alisha Jarwala
Brown, Goldstein & Levy, LLP
120 East Baltimore Street, Suite 2500
Baltimore, MD 21202
Phone: 410-962-1030
Fax: 410-385-0869
jweber@browngold.com
adf@browngold.com
ldimartino@browngold.com
ajarwala@browngold.com

*Counsel for Plaintiffs-Appellants*

Janell M. Byrd
Morgan Williams
Sasha Samberg-Champion
National Fair Housing Alliance
1331 Pennsylvania Avenue NW, Suite 650
Washington, DC 20004
Phone: 202-898-1661
jbyrd-chichester@nationalfairhousing.org
mwilliams@nationalfairhousing.org
ssamberg-champion@nationalfairhousing.org

Michael B. Posner
Posner PLLC
1601 Connecticut Avenue NW, Suite 800
Washington DC 20009
Phone: 202-670-3815
michael@posnerpllc.com

*Counsel for Plaintiff-Appellant National Fair
Housing Alliance*

January 21, 2026

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 25-2352     **Caption:** NFHA, et al. v. Bank of America, et al.

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

     [✓] this brief or other document contains _____12997_____ [*state number of*] words

     [ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

     [✓] this brief or other document has been prepared in a proportionally spaced typeface using
         Microsoft Word _____ [*identify word processing program*] in
         Times New Roman, 14 pt, serif _____ [*identify font, size, and type style*];

**or**

     [ ] this brief or other document has been prepared in a monospaced typeface using
         _____ [*identify word processing program*] in
         _____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) /s/ Jessica P. Weber _____

Party Name Plaintiffs-Appellants _____ Date: 1/21/2026 _____